UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CORNELIUS WILLIAMS,<br>          *Defendant.* | 12-CR-944 (DEH) |
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CORNELIUS WILLIAMS,<br>          *Defendant.* | 25-CR-88 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

Defendant Cornelius Williams is charged with three counts, including Brandishing a Firearm in Furtherance of Hobbs Act Robbery ("Count Three"), in violation of 18 U.S.C. § 924(c)(1)(A)(ii). That offense would normally carry a mandatory minimum sentence of seven years, but in this case, it carries a mandatory minimum sentence of 25 years due to Mr. Williams's prior conviction in 2013—a conviction that all parties agree no longer passes constitutional muster under the Supreme Court's decision in *United States v. Davis*, 588 U.S. 445, 448 (2019) and the Second Circuit's decision in *United States v. Barrett*, 937 F.3d 126, 129 (2d Cir. 2019).

In June 2016, Mr. Williams's counsel filed a habeas petition seeking to vacate his prior conviction. The petition was dismissed without prejudice on his counsel's consent in 2017; but after *Davis* was decided in 2019, his counsel inexplicably never sought relief from the dismissal order, or otherwise sought to re-file the petition. Now before the Court is a Rule 60(b)(6) motion to vacate the order dismissing Mr. Williams's habeas petition, so that it may be considered on the

merits.  *See* Order, No. 12 Crim. 944, ECF No. 16.[1]  For the reasons stated herein, the Rule 60(b)(6)

motion is **GRANTED**.

**BACKGROUND[2]**

I.    **Mr. Williams's Prior Conviction and the Supreme Court's Subsequent Decision in**
      ***United States v. Davis***

In 2013, Mr. Williams pled guilty to a one-count information charging him with the use of

a firearm in furtherance of a crime of violence—conspiracy to commit a Hobbs Act Robbery—

under 18 U.S.C. § 924(c) ("§ 924(c)").[3]  Mem. Law Supp. Mot. Vacate ("Def.'s Supp.") at 5-7,

ECF No. 20.  He was sentenced to 120 months in prison (the "2013 conviction" or "conviction").

*Id.*  While Mr. Williams was incarcerated on this conviction, several important cases were decided

that called into question, and ultimately determined, that conspiracy to commit a Hobbs Act

Robbery may not serve as a predicate "crime of violence" under § 924(c).

First, in 2015, the Supreme Court held in *Johnson v. United States* that a different provision

of 18 U.S.C. § 924—subsection (e)—included a definition of "violent felony" that was

unconstitutionally vague because it left "grave uncertainty about how to estimate the risk posed by

a crime," and left "uncertainty about how much risk it takes for a crime to qualify as a violent

felony."  576 U.S. 591, 597 (2015) (considering the definition of "violent felony" under 18 U.S.C.

---

[1] Unless otherwise specified, all other citations to the docket in this Order refer to the docket of No. 25 Crim. 88.

[2] The following facts are drawn from the parties' submissions in support of and in opposition to the Rule 60(b)(6) motion, including the affidavits and other exhibits attached to the motion papers.  Citations to a party's briefing incorporate by reference the documents cited therein.

[3] At a hearing on this motion, the Government hypothesized the possibility that the predicate "crime of violence" to which Mr. Williams pled may have been something other than conspiracy to commit Hobbs Act Robbery.  Mar. 20, 2026 Hearing Tr. ("Tr.") 38:12-39:10.  But there is nothing in the record before the Court to indicate that the predicate offense was anything other than what was charged in the Information.

2

§ 924(e)). Four years later, in *United States v. Davis*, the Supreme Court applied the *Johnson* reasoning to the definition of "crime of violence" used in 18 U.S.C. § 924(c)—i.e., the subsection of the statute that Mr. Williams was convicted of in 2013—finding it to be unconstitutionally vague as well. 588 U.S. at 448 (considering the definition of "crime of violence" under 18 U.S.C. § 924(c)). Later that year, the Second Circuit confirmed that the *Davis* holding applied to conspiracy to commit Hobbs Act Robbery, the precise crime of violence underlying Mr. Williams's 2013 conviction. *See Barrett*, 937 F.3d at 129. The effect of this trio of cases was to render Mr. Williams's 2013 conviction unconstitutional.

## II.     Mr. Williams's 2016 Habeas Petition

On June 23, 2016, after the Supreme Court's decision in *Johnson* but before *Davis* and *Barrett* were decided, the Federal Defenders—purporting to represent Mr. Williams—timely filed an initial "placeholder" habeas petition[4] seeking relief under 28 U.S.C. § 2255 (the "petition" or "§ 2255 petition"). Def.'s Supp. at 7; *see also* No. 12 Crim. 944, ECF No. 11. In that petition, he argued that, "in light of the *Johnson* decision, his 2013 . . . conviction must be vacated because conspiracy to commit Hobbs Act Robbery could no longer serve as a predicate crime of violence" under § 924(c). Def.'s Supp. at 7. The Court subsequently asked for additional briefing on this argument given then-binding Second Circuit precedent foreclosing the application of *Johnson*'s holding to the definition of "crime of violence" under § 924(c). *Id.*

In response, on October 2, 2017, Mr. Williams's counsel moved to withdraw his § 2255 petition and consented to its dismissal. No. 12 Crim. 944, ECF No. 17. That motion "respectfully

---

[4] On June 23, 2016, the Chief Judge of the Southern District of New York issued a Standing Order allowing Federal Defenders, who were appointed to represent eligible prisoners, "to file initial petitions under 28 U.S.C. § 2255 . . . , utilizing the Court's form petition as a 'placeholder' petition" in anticipation of "several hundred petitions [that] will be filed by federal prisoners" as a result of *Johnson*. No. 12 Crim. 944, ECF No. 12.

request[ed] that the Court dismiss th[e] action without prejudice" and argued that "[d]ismissal without prejudice [was] particularly appropriate . . . in light of the stringent restraints that 28 U.S.C. § 2255 imposes on second or successive motions . . . ." *Id.*  On October 3, 2017, the Court granted the motion and dismissed Mr. Williams's § 2255 petition without prejudice.  *Id.*; Def.'s Supp. at 7.

After *Davis* and *Barrett* rendered Mr. Williams's 2013 conviction unconstitutional, Mr. Williams's counsel never sought relief from judgment so that his § 2255 petition could be considered on the merits, nor did they ever re-file the petition, despite the fact that doing so "would have likely resulted in his . . . § 924(c) conviction being vacated . . . ." *Id.* at 7-8.

### III.     Mr. Williams's Contact with Counsel During the Pendency of His § 2255 Petition

The level of awareness and input that Mr. Williams had in these post-conviction proceedings is a source of debate among the parties.  The relevant facts are quite unusual.

Mr. Williams, who was represented during his plea negotiations and sentencing by a court-appointed CJA lawyer, attests that "he had no idea that Federal Defenders had been appointed to represent him" in 2016 when his § 2255 petition was filed.  Suppl. Mem. Law Supp. Mot. Vacate ("Def.'s Suppl. Supp.") at 4-5, 8, ECF No. 38.  Mr. Williams further attests that "neither CJA Counsel . . . nor Federal Defenders communicated to [him] that the *Johnson* decision could impact his case, [he] never learned of the potential that his sentence could be vacated, that a . . . motion was filed on his behalf, or that Federal Defenders had been appointed to represent him." *Id.* at 6.

There is nothing on the face of the petition or other related filings to indicate anything to the contrary, and there is some evidence that corroborates his testimony.  Notably, a § 2255 petition

4

typically requires a petitioner's signature,[5] but Mr. Williams's petition was never signed by him and was instead signed only by a Federal Defenders attorney. *Id.* at 5; No. 12 Crim. 944, ECF No. 11. In fact, the attorney inserted a notation that changed the label of the petition's signatory from "Signature of Movant" to "Signature of [Counsel for] Movant." No. 12 Crim. 944, ECF No. 11. The placeholder petition contained a blank space under the lines, that "[i]f the person signing is not the movant, state relationship to movant and explain why movant is not signing this motion[,]" but no explanation was provided as to why Mr. Williams did not sign the petition. *Id.* Further, the placeholder petition does not suggest that it was ever even mailed to Mr. Williams. Instead, the attorney crossed out the portion of the petition where the signatory is to declare, under penalty of perjury, "that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system." *Id.*; *see also* Def.'s Suppl. Supp. at 5-6 ("Federal Defenders struck out a line on the form [§ 2255 petition] that confirmed that they had mailed the petition to Williams.").

There is additional evidence in the record supporting Mr. Williams's assertion that he had no knowledge that he was represented by the Federal Defenders. First, just one day after the Federal Defenders filed the § 2255 petition, Mr. Williams filed a pro se FOIA request for his case file and sentencing transcripts, in which he requested a fee waiver. *Compare* June 23, 2016 Habeas Petition, No. 12 Crim. 944, ECF No. 11 *with* June 24, 2016 Ltr. Requesting Case File & Sentencing Tr., No. 12 Crim. 944, ECF No. 10. There would be little reason to file such a request pro se if he knew or had some understanding that the Federal Defenders' office was representing him at that point. Further, in multiple follow-up letters to the Court, Mr. Williams described his lawyer as his CJA attorney from his 2013 case, Paul Rinaldo, and made no mention of the Federal Defenders.

---

[5] *See* 28 U.S.C. § 2242; *see also* U.S. District Court for the Southern District of New York, Instructions for Filing Motion under 28 U.S.C. § 2255, *available at* https://perma.cc/WET3-C2NQ.

*See, e.g.*, Aug. 28, 2016 Ltr. Requesting Sentencing Tr., No. 12 Crim. 944, ECF No. 13; Sep. 4, 2016 Ltr. Requesting Sentencing Tr., No. 12 Crim. 944, ECF No. 14.

The Government, for its part, notes that there is evidence of some sort of contact between Mr. Williams and the Federal Defenders around the time of his petition.  It points to Bureau of Prisons ("BOP") Contact Log entries beginning on January 5, 2017 showing that phone numbers associated with the Federal Defenders were added to Mr. Williams's contact list on various dates in 2017, 2019, and 2020.[6]  The Government represents (but provides no admissible evidence demonstrating) that "[t]o register an individual as a contact, an inmate must submit a BOP Contact Request Form specifying the individual's full name, phone number, and mailing address."  Gov't's Suppl. Mem. Law Opp'n Mot. Vacate ("Gov't's Suppl. Opp'n") at 8, ECF No. 42.  From this fact, the Government infers that Mr. Williams must have understood that he was represented by the Federal Defenders during this critical period.  *See id.* at 14.  But the Government acknowledged at a hearing on this motion that a Contact Log does not indicate whether any calls were actually made to or from any of the phone numbers on a prisoner's contact list.  March 20, 2026 Hearing Tr. ("Tr.") 16:24-17:24.  Meanwhile, the Federal Defenders' file for Mr. Williams also includes a note indicating a phone call from Federal Defenders to Mr. Williams on June 27, 2016, four days *after* his habeas petition was filed.  Def.'s Suppl. Reply Supp. Mot. Vacate ("Def.'s Suppl. Reply") at 1 n.1, ECF No. 45.  Notably, however, Mr. Williams's Contact Log does not reflect the addition of any phone numbers from Federal Defenders to his contact list prior to 2017.  And Mr. Williams

---

[6] The BOP Contact Log has four entries for callers identified as "AFD," which the parties do not dispute refers to Federal Defenders.  Def.'s Suppl. Reply Supp. Mot. Vacate ("Def.'s Suppl. Reply") at 1-2, ECF No. 45.  Those entries were made on January 5, 2017, May 10, 2019, August 14, 2019, and January 23, 2020.  *Id.* at 2.  Three of the numbers have area codes from states other than New York, including Texas and Indiana.  *Id.*

attests that he has no memory of this purported call, or of any contacts whatsoever with Federal Defenders. *See id.*

It is difficult to assess what to make of this conflicting evidence. In any event, there are "no other notes of any calls with Williams and there is nothing in the [Federal Defenders'] file to suggest that Federal Defenders spoke to Williams about the October 2017 withdrawal of his petition or the *Davis* decision." *Id.* Ultimately, there is no evidence that Mr. Williams actually spoke to the Federal Defenders before his habeas petition was filed on June 23, 2016, or gave input pertaining to the initial decision to file the petition. There is also no evidence that they spoke around the time of the withdrawal of his petition on October 4, 2017, or that he was made aware of the decision to consent to its dismissal. And there is no evidence that he was consulted about the decision, if any was actually made, not to seek relief from judgment or to re-file his petition after *Davis* and *Barrett* were decided in 2019.

## IV.    Post-*Davis* and -*Barrett* Events and Current Charge

With his now-unconstitutional conviction left unchallenged, Mr. Williams remained in prison until 2020, when he was ordered to report to a halfway house in New Jersey. Gov't's Suppl. Opp'n at 10. He never reported as ordered, and in 2021, Mr. Williams was arrested, charged with escape, and brought back to federal custody. *Id.* Mr. Williams remained in custody on his 2013 conviction until 2022, when he was released and began a five-year period of supervised release. *Id.* Had Mr. Williams's 2013 conviction been vacated, none of these events would have occurred, and he would not have continued to experience a deprivation of his liberty—whether in prison, at a halfway house, or through supervised release.

Apart from all of that, the now-unconstitutional 2013 conviction continues to follow Mr. Williams in other profound ways. Presently before the Court is a three-count Indictment stemming from alleged events that occurred in 2024. Count Three charges him with Brandishing a Firearm

in Furtherance of Hobbs Act Robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(i) & (ii). Def.'s Supp. at 6. Normally, Count Three would carry a mandatory minimum sentence of 7 years; however, as a result of his prior (now unconstitutional) conviction, should Mr. Williams ultimately be found guilty on Count Three, he faces a mandatory minimum sentence 18 years longer—that is, a mandatory minimum term of 25 years' imprisonment. *Id.*

On August 22, 2025, Mr. Williams filed a motion under Rule 60(b)(6) requesting that the Court vacate its prior order denying, without prejudice, Mr. Williams's § 2255 petition.[7] *Id.* at 8; Mot. Dismiss, ECF No. 19. On October 14, 2025, a hearing on the motion was held. At that hearing, Mr. Williams's present counsel on the new indictment—Federal Defenders—noted that it was conflicted from raising issues related to the abandonment by counsel of his § 2255 petition, because it was Federal Defenders who filed, withdrew, and then inexplicably failed to re-file his petition after *Davis* and *Barrett* were decided. Oct. 14, 2025 Hearing Tr. 25:25-26:4; Def.'s Supp. at 13 n.2; Def.'s Suppl. Supp. at 2, 8. Following the October 14, 2025 hearing, the Court appointed CJA counsel for Mr. Williams for the limited purpose of representing and advising him on abandonment pursuant to Rule 60(b). ECF No. 27. The parties subsequently briefed the issue of abandonment, and a second hearing was held on March 20, 2026.

---

[7] In the alternative, Mr. Williams asks the Court to construe his motion as a renewed petition to vacate his prior sentence pursuant to § 2255. Def.'s Supp. at 8. Because the Court decides the issue under Rule 60(b)(6), it does not address this argument.

## LEGAL STANDARD[8]

Rule 60(b) provides that a

court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

By its terms, the catchall provision, subsection (b)(6), permits courts to award relief for reasons "other" than the specific circumstances set out in Rule 60(b)(1)-(5). But "despite its open wording," the provision "has been narrowly cabined." *Harris v. United States*, 367 F.3d 74, 80 (2d Cir. 2004). Courts have limited relief under Rule 60(b)(6) to two situations: where "extraordinary circumstances" justify relief, or where the failure to award relief would result in "extreme hardship" to the movant. *See id.* at 81 ("Generally, it is well established that a proper case for Rule 60(b)(6) relief is only one of extraordinary circumstances or extreme hardship."); *see also ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 109 (2d Cir. 2012) (holding that Rule 60(b)(6) relief is warranted only "if extraordinary circumstances are present or the failure to

---

[8] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

grant relief would work extreme hardship on the movant").  A motion brought under Rule 60(b)(6) "must be made within a reasonable time . . . ."  Rule 60(c).

Relief under Rule 60(b) is "available for a previous habeas proceeding only when the . . . motion attacks the integrity of the previous habeas proceeding rather than the underlying criminal conviction."  *Harris*, 367 F.3d at 77.  But "Rule 60(b) vests wide discretion in courts," *Buck v. Davis*, 580 U.S. 100, 123 (2017), "and should be liberally construed when substantial justice will thus be served," *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) ("Rule 60(b)(6) confers broad discretion on the trial court to grant relief when appropriate to accomplish justice."). The standard of review on appeal is abuse of that discretion.  *Harris*, 376 F.3d at 79.

## DISCUSSION

Mr. Williams argues that relief under Rule 60(b)(6) is appropriate because leaving the prior denial of his § 2255 petition in place "is no longer equitable, and . . . [it] would result in a manifest injustice due to no fault of Mr. Williams."  Def.'s Supp. at 9.  He further argues that this request "is aimed at the integrity of his prior habeas proceeding rather than his underlying criminal conviction," because Federal Defenders did not provide effective counsel in his post-conviction proceedings.  *Id.* at 10-11.  Mr. Williams asserts that this ineffective assistance of counsel rose to the level of "extraordinary circumstances" because his lawyer violated the rules of professional conduct.  Def.'s Suppl. Supp. at 8-12.

The Court largely agrees.  As discussed further below, it grants relief under Rule 60(b)(6) on the grounds (1) of "extreme hardship"; and (2) that his counsel abandoned him altogether, which satisfies the "extraordinary circumstances" prong of the Rule.

## I.    Threshold Issues

Before turning to the merits of Mr. Williams's motion, the Court addresses two threshold issues raised by the Government: (1) whether the motion is, in substance, a renewed habeas petition and therefore procedurally barred; and (2) whether his Rule 60(b) motion is untimely.

### A.    Whether the Motion is, in Substance, a Renewed Habeas Petition

The Government first argues that Mr. Williams's motion is, in substance, an attack on his 2013 conviction, and not a challenge to the integrity of his habeas proceedings.  The Government makes two arguments in this respect.  First, the Government says that Mr. Williams's motion makes the same argument for relief that he raised in his § 2255 petition, and is thus so similar that it must comply with the procedural requirements of § 2255.  *See* Gov't's Mem. Law Opp'n Mot. Vacate ("Gov't's Opp'n") at 11 (citing *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005)), ECF No. 23.  Second, the Government argues that by citing *Davis* and *Barrett* as a basis for relief, Mr. Williams now seeks to add a new claim for relief under his prior habeas petition, and that Rule 60(b) is an improper vehicle to do so.  *Id.* at 11-12.  In essence, the Government argues that permitting relief under Rule 60(b)(6) would amount to an end run around the procedural requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Id.* at 12.

But the Government mischaracterizes the relief sought by Mr. Williams on this motion, which does not directly attack his 2013 conviction.  Rather, it seeks to vacate the order denying his habeas petition on the grounds discussed below, so that the petition may be considered by the Court on the merits.  Such relief is entirely proper under Rule 60(b).  As the Second Circuit has explained, "a motion under Rule 60(b) to vacate a judgment denying habeas is not a second or successive habeas petition and should therefore be treated as any other motion under Rule 60(b)." *Rodriguez v. Mitchell*, 252 F.3d 191, 198 (2d Cir. 2001)*; see also Harris*, 367 F.3d at 80 (considering the merits of a Rule 60(b) motion that "arguably attacks the integrity of . . . a habeas

11

proceeding" even when the court found that attack to be suspect and ultimately unsuccessful); *Gitten v. United States*, 311 F.3d 529, 534 (2d Cir. 2022) (cautioning district courts not to recharacterize Rule 60(b) motions that both challenge the correctness of a habeas denial *and* present new grounds to invalidate the original conviction as a second or successive collateral attack without first granting leave to amend and cure).

Thus, while the downstream effect of Mr. Williams's Rule 60(b)(6) motion—if his petition is ultimately granted—may eventually be the vacatur of his 2013 conviction, that does not mean that this motion seeks improper relief.  Put another way, Mr. Williams's Rule 60(b)(6) motion "is undoubtedly a step on the road to the ultimate objective of invalidating the judgment of conviction, [but] it does not seek that relief. . . . The grant of such a motion would not have the effect of invalidating the . . . conviction.  It would merely reinstate the previously dismissed petition for habeas, opening the way for further proceedings seeking ultimately to vacate the conviction." *See Rodriguez*, 252 F.3d at 198.

### B.    Timeliness

The Government argues that the motion is untimely because it was filed approximately six years after the *Davis* and *Barrett* decisions.  Gov't's Opp'n at 10-11.  But Rule 60(c) provides that a Rule 60(b) motion "must be made within a reasonable time," and sets no bright-line rule for when a motion under subsection (6) must be made.  That stands in contrast to other subsections of the rule.  Under Rule 60(c), a motion under subsections (1), (2), and (3) of Rule 60(b) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding."  But there is no such definitive cutoff for the other subsections of Rule 60(b), including subsection (6).  That is, the only guidance that Rule 60(c) provides regarding the timing of a Rule 60(b)(6) motion is that it be filed within a "reasonable time."

12

"What is reasonable is based on the particular circumstances of the case, taking into account the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality." *Wyche v. Advanced Drainage Sys., Inc.*, 332 F.R.D. 109, 116 (S.D.N.Y. 2019); *see also PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983) ("In considering whether a Rule 60(b)(6) motion is timely, we must scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay."). Courts "have acted on the premise that cases of extreme hardship may be brought within a more liberal dispensation" with respect to the Rule's time limits. 11 *Wright & Miller's Federal Practice & Procedure* § 2864 (3d ed. 2026) (citing *United States v. Karahalias*, 205 F.2d 331 (2d Cir. 1953) (Hand, J.) (granting relief 17 years after default judgment in denaturalization case)).

This is not an ordinary situation where the "movant made a fair and deliberate choice at some earlier time not to move for relief." *Id.* Rather, this is a highly unusual case featuring several mitigating circumstances that account for Mr. Williams's delay in bringing this motion. First and most importantly, as explained below, the Court finds that his counsel abandoned him, which he did not discover until these proceedings, and which explains his delay in filing this motion. Second, Mr. Williams was incarcerated at the time *Davis* was decided, which necessarily limits a person's ability to monitor their case and the adequacy of their counsel.[9] *Cf. United States v. Bevill*, No. 18-10708, 2021 WL 4995478 (5th Cir. Oct. 27, 2021) (holding that the district court

---

[9] These limitations are reflected in the record. For example, over the course of two years, Mr. Williams made six requests for his case file and sentencing transcript before receiving confirmation that they had been ordered. *See* April 25, 2014 Ltr. Requesting Sentencing Tr., No. 12 Crim. 944, ECF No. 5; June 15, 2015 Mot. Requesting Sentencing Tr., No. 12 Crim. 944, ECF No. 6; Oct. 18, 2015 Mot. Requesting Sentencing Tr., No. 12 Crim. 944, ECF No. 8; June 24, 2016 Ltr. Requesting Case File & Sentencing Tr., No. 12 Crim. 944, ECF No. 10; Aug. 28, 2016 Ltr. Requesting Sentencing Tr., No. 12 Crim. 944, ECF No. 13; Sep. 4, 2016 Ltr. Requesting Sentencing Tr., No. 12 Crim. 944, ECF No. 14.

abused its discretion in denying relief under Rule 60(b) from dismissal of habeas petition for non-prosecution where prisoner, who was recently transferred to a new detention facility, failed to receive notice that the case had been transferred to a new magistrate judge).  Third, Mr. Williams lacked legal training, and his only formal education ended during high school.  *See* Def.'s Suppl. Supp. at 20.  This mitigates his delay in filing his Rule 60(b) motion in two respects: (1) he had limited capacity to evaluate the performance of his lawyer; and (2) he lacked the training to effectively represent himself.  *Cf. Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 32 (2d Cir. 2015) (finding lack of legal expertise or training a mitigating factor in delay in filing a habeas petition such that equitable tolling was warranted).  Fourth, Mr. Williams's financial limitations necessarily prevented him from obtaining other representation.  Def.'s Suppl. Supp. at 19.  Together, these factors significantly mitigate any prolonged delay in requesting relief from judgment.

The Court next turns to potential prejudice to the Government.  *See DeLong v. Soufiane*, No. 05 Civ. 5529, 2008 WL 4561617, at *5 (E.D.N.Y. May 1, 2008) ("In a Rule 60(b) motion, the movant must demonstrate that the relief requested will not prejudice the other party.").  Aside from the issue of finality, which is addressed below, the Government is unable to identify any sort of prejudice from the re-opening of Mr. Williams's habeas petition.  Indeed, the Government's briefs make no effort to do so.  *See generally* Gov't Opp'n; Gov't Suppl. Opp'n.  When asked at the March 20 hearing, the Government's only offer of prejudice was a scenario in which, if Mr. Williams's 2013 conviction were vacated, the time in prison that he served on it might form the basis for some sort of "good time" credit that could be applied to a future prison sentence.  Tr. 45:1-7 ("[T]there's a scenario I believe where the defendant is sentenced on the current conduct and the prior time he spent in the BOP facility is applied towards the new sentence, right.  And so there is a scenario where the defendant has committed a Hobbs Act robbery in 2012 and another

14

Hobbs Act robbery in 2024, and effectively receives no additional time for those offenses.").  But when asked for any authority for the proposition that time served on a vacated sentence could count as good time credit towards a future sentence, the Government could not cite any and could not identify an example of this actually occurring, ultimately agreeing that this has "never happened" before.  *See* Tr. 45:16-47:6; *cf. Holt v. Hull*, No. 24-1767, ECF No. 48, at *5 (4th Cir. July 22, 2025) ("We know of no principle requiring one jurisdiction to transfer credit for pre-trial detention to another jurisdiction for an unrelated sentence when that detention would apply to a future sentence in the first jurisdiction.").

At the hearing, the Government also appeared to argue that, notwithstanding the unconstitutionality of his 2013 conviction, Mr. Williams engaged in bad conduct, which merited punishment then and which should be taken into account in the future should he be convicted of the pending charges.  *See* Tr. 44:12-14.  But Mr. Williams has already served the 10-year term of incarceration imposed in that case.  "As such, granting the requested relief would not result in him being released from prison early, having victims placed [in] harm's way, or the government having to re-try an old case."  Def.'s Supp. at 11.  As to any future convictions, a sentencing court can take into account the full range of Mr. Williams's past conduct in crafting a sentence should he be convicted on the current (or any future) charges.  *See* 18 U.S.C.  § 3553(a) (directing a court to consider "the history and characteristics of the defendant" in sentencing).

Finally, the Court acknowledges that the interest in finality is an important one.  *See, e.g.*, *Calderon v. Thompson*, 523 U.S. 538, 555 (1998) ("Finality is essential to both the retributive and the deterrent functions of criminal law.").  But in the context of a Rule 60(b)(6) motion, simply stating that interest is not enough, by itself, to outweigh significant concrete equitable considerations articulated by a movant.  *Gonzalez*, 545 U.S. at 528-29 ("The mere recitation of [policy considerations] shows why we give little weight to respondent's appeal to the virtues of

15

finality."). And the Government here offers no specific reason why finality *in this case* should outweigh Mr. Williams's significant liberty interests (i.e., avoiding exposure to a mandatory minimum sentence of 25, instead of seven, years). *See, e.g.*, Oct. 14, 2025 Tr. 11:1-7; Gov't Opp'n at 8; Gov't Suppl. Opp'n at 13. Merely incanting the interest in finality is "unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality." *Gonzalez*, 545 U.S. at 529.

Accordingly, the Court finds that, under the totality of the circumstances in this case, Mr. Williams filed his Rule 60(b)(6) motion within a reasonable time.

## II.    The Merits

Having concluded that there is no procedural bar to consideration of this motion, the Court now turns to its merits. As noted, the Second Circuit has explained that "a proper case for Rule 60(b)(6) relief is only one of extraordinary circumstances or extreme hardship." *Harris*, 367 F.3d at 81. Both are present here.

### A.    Extreme Hardship

Absent relief, Mr. Williams's § 2255 petition challenging his indisputably unconstitutional 2013 conviction will remain dismissed, leaving him to face a possible 25-year mandatory minimum sentence if convicted on Count Three of the current indictment, instead of a 7-year mandatory minimum. As explained below, this amounts to extreme hardship meriting relief under Rule 60(b)(6).

"Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice." *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d 440, 452 (S.D.N.Y. 2011). The nature of the hardship faced by Mr. Williams, however, is quite extreme. While there is not much case law on the meaning of "extreme hardship" for purposes of Rule 60(b)(6), a decision from the Eastern District of New York, *Mickens v. United States*, 333 F. Supp. 2d 44 (E.D.N.Y. 2004), is instructive

16

here.  There, defendant's counsel failed to convey a plea offer, and, in subsequent habeas proceedings, the government failed to disclose evidence of that offer.  *Id.* at 48.  As a result, the movant faced a sentence that was at least 15 years longer than the one he could have negotiated had he had effective counsel.  *See id.*  While the court stopped short of granting the motion on the merits because the record was not complete at that time, it ordered an evidentiary hearing—and in so doing, the court rejected the government's argument that the movant did not suffer from extreme hardship.  *Id.* at 47-48 (granting an evidentiary hearing to develop facts of an alleged plea offer that was never communicated to movant in part because "the possible hardship to [movant] is suggested by the fact that he is serving a 35-year sentence imposed subsequent to a conviction at trial, when he would, if he had accepted the claimed plea offer, have received a sentence of no more—and possibly less than—20 years pursuant to the allegedly offered plea").[10]

On *Mickens*'s logic, the exposure to an additional 18 years on a mandatory minimum sentence based on an unconstitutional prior conviction is an extreme hardship and would result in a manifest injustice.  Indeed, it is difficult to understand why an indisputably unconstitutional prior conviction should cause Mr. Williams to face the possibility of a mandatory minimum sentence almost four times as long as he would otherwise.  The facts here stand in stark contrast to cases in this Circuit in which courts have not extended Rule 60(b)(6) relief on extreme hardship grounds.  *Cf. Ezagui v. City of New York*, No. 20 Civ. 6360, 2023 WL 2335946, at *6 n.1 (E.D.N.Y. Feb. 14, 2023) (rejecting hardship argument where only minor inconveniences were raised); *Cyber Fin. Network v. Lendingtree Inc.*, No. 03 Civ. 6062, 2007 WL 623642, at *5 (E.D.N.Y. Feb. 22, 2007) (holding that inconvenient venue was not sufficient to establish extreme hardship).  And he has no

---

[10] The *Mickens* Court ultimately decided the issue under Rule 60(b)(2), not Rule 60(b)(6), rendering the request for relief under the latter provision moot.  *See generally Mickens v. United States*, No. 97 Civ. 2122, 2005 WL 2038589 (E.D.N.Y. Aug. 17, 2005).

other avenues for relief.  *Cf. Weitzner v. Cynosure, Inc.*, No. 12 Civ. 3668, 2014 WL 508237, at *6 (E.D.N.Y. Feb. 6, 2014) (denying extreme hardship where other procedural avenues for relief remained available).

The Government does not meaningfully dispute that Mr. Williams faces extreme hardship, devoting essentially all of its briefing regarding the merits to arguing that Mr. Williams cannot meet Rule 60(b)(6)'s "extraordinary circumstances" standard.  *See* Gov't Opp'n at 8-15; Gov't Suppl. Opp'n at 12-16.  But extreme hardship is an independent basis for relief under Rule 60(b)(6).  *See Harris*, 367 F.3d at 81 (stating that "a proper case for Rule 60(b)(6) relief is only one of extraordinary circumstances *or* extreme hardship") (emphasis added).  Given the failure of the Government to address whether extreme hardship is present here, it has likely waived any arguments to the contrary.  *See United States v. Stillwell*, 986 F.3d 196, 200 (2d Cir. 2021) ("It is . . . a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.  This rule is not an absolute bar to raising new issues on appeal; the general rule is disregarded when we think it necessary to remedy an obvious injustice.").

In sum, while relief under Rule 60(b)(6) on extreme hardship grounds should be awarded "sparingly as an equitable remedy to prevent manifest injustice," *Lee*, 765 F.Supp. 2d at 452, it is difficult to think of a more "extreme" scenario, or a more manifest injustice, than an additional 18 years of mandatory minimum sentencing exposure based on an unconstitutional prior conviction, as Mr. Williams faces here.

### B.    Extraordinary Circumstances

While the Court has determined that relief is appropriate on the ground of extreme hardship alone, for the sake of completeness the Court also addresses the separate question of whether extraordinary circumstances within the meaning of Rule 60(b)(6) are present here.  It concludes that they are, such that relief is warranted on this basis as well.

Extraordinary circumstances warranting relief under Rule 60(b)(6) "rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535.  To establish such circumstances, "a habeas petitioner must show that his lawyer abandoned the case and prevented the client from being heard." *Harris*, 367 F.3d at 77.  Such abandonment can be either through physical disappearance or constructive disappearance.  *See id.* at 81 (citing *Vindigni v. Meyer*, 441 F.2d 376 (2d Cir. 1971) (physical disappearance) & *United States v. Cirami*, 563 F.2d 26, 34-35 (2d Cir. 1977) (constructive disappearance)).  However, even when a client is abandoned by counsel, the client may remain "bound by the inexcusable conduct of her counsel" where there is "no indication of diligent efforts by [the client] to induce [counsel] to fulfill his duty." *Dominguez v. United States*, 583 F.2d 615, 618 (2d Cir. 1978).  In sum, "a Rule 60(b)(6) movant must show that his lawyer agreed to prosecute a habeas petitioner's case, abandoned it, and consequently deprived the petitioner of any opportunity to be heard at all." *Harris*, 367 F.3d at 81.

The Court therefore turns to (1) whether Mr. Williams's habeas counsel abandoned his case; and (2) whether he was sufficiently diligent under Rule 60(b)(6).

### 1.    Abandonment through Constructive Disappearance

Mr. Williams argues that his habeas counsel—the Federal Defenders—abandoned his case via constructive (rather than physical) disappearance.  That is, he argues that counsel: (1) "agreed to prosecute [his] habeas petition[]" when they filed it; (2) subsequently "abandoned" him when they consented to dismissal of the petition, *see* No. 12 Crim. 944, ECF No. 17; but then, (3) failed to refile the § 2255 petition after *Davis* and *Bennett* were decided, or to take any other actions on Mr. Williams's behalf,[11] which "consequently deprived [Mr. Williams] of any opportunity to be

---

[11] At the hearing, Mr. Williams argued that *any* failure to raise *Davis* would constitute constructive disappearance; for example, even if a subsequent § 2255 petition had been pursued on Mr. Williams's behalf, but his attorney simply forgot to raise *Davis* in its argument, constructive

heard at all."[12] *See Harris*, 367 F.3d at 81. The Court agrees that this was more than mere neglect; it was "egregious and profound." *See id.* After purporting to represent Mr. Williams and filing a habeas petition on his behalf, and then withdrawing it for the specific purpose of preserving his right to re-file it in the event of an intervening change in law, his counsel simply "disappeared" and failed to pursue relief after that change in law occurred. *See Disappear*, Oxford English Dictionary (defining "disappear" as "[t]o cease to be present; to go or be taken away; to be no longer found"), https://perma.cc/87X5-TMUG.

While there is little case law defining what precisely constitutes constructive disappearance, the facts of this case are similar to those in *Church & Dwight Co. v. Kaloti Enterprises of Michigan, L.L.C.*, where a court in the Eastern District of New York granted Rule 60(b)(6) relief based on the constructive disappearance of counsel. No. 07 Civ. 612, 2011 WL 4529605, at *1 (E.D.N.Y. Sep. 28, 2011). There, counsel for the defendant "failed to make any opposition to [the plaintiff's] motion seeking default judgment against [the defendant], despite the fact that [the defendant's] deposition testimony showed a colorable defense to liability." *Id.* at *7. Here, after *Davis* and *Barrett* were decided, overturning Second Circuit precedent barring the relief sought by Mr. Williams, habeas counsel failed to re-file his § 2255 petition with what indisputably would have been a winning argument. There, the defendant was an "immigrant with limited English skills," making her particularly vulnerable and dependent on her attorney. *Id.* Here, Mr.

---

disappearance could be found. Tr. 8:16-24. The Court can find no authority for that proposition, which sweeps too broadly and which, contrary to Second Circuit guidance, would seem to make mere attorney negligence an "extraordinary circumstance." *See, e.g.*, *Harris*, 367 F.3d at 81.

[12] As Mr. Williams argues in his supplemental papers in support of this motion, this conduct arguably also violated the rules of professional responsibility. Def.'s Suppl. Supp. at 9-12 (citing N.Y. Bar Ass'n R. Prof. Conduct 1.4). Under the equitable tolling standard applied to § 2255 petitions, violations of rules of professional responsibility amount to "extraordinary circumstances." *Baldayaque v. United States*, 338 F.3d 145, 152-53 (2d Cir. 2003).

Williams was incarcerated, has had no formal education beyond some high school, and lacks funds to hire an attorney, making him similarly vulnerable.  Def.'s Suppl. Supp. at 14.

Finally, the court in *Church & Dwight* considered the consequences of the attorney's abandonment when determining the egregiousness of the behavior.  There, the failure to defend "resulted in an exorbitant statutory damages award of $4 million." *Church & Dwight Co.*, 2011 WL 4529605, at *7.  And here, the consequences of Mr. Williams's counsel could hardly be more stark, as the failure to re-file the § 2255 petition post-*Davis* not only forced Mr. Williams to serve the remaining term of imprisonment on an unconstitutional conviction, it now also leaves him facing a possible mandatory minimum sentence that is almost four times as long as that to which he would otherwise be exposed.[13]  *Cf. Buck*, 580 U.S. at 123 ("In determining whether extraordinary circumstances are present, a court may consider a wide range of factors.  These may include, in an appropriate case, the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process.").

The Government raises three counter-arguments.  First, citing *United States v. Cirami*, the Government argues that constructive disappearance of counsel occurs only when counsel suffers from a psychological disorder that prevents them from meaningfully appearing on behalf of their client.  *See, e.g.*, Gov't's Opp'n at 13 (citing *Cirami*, 563 F.2d at 34); Tr. 13:25-14:9; 34:15-17.  However, "*Cirami* does not stand for the proposition that only mental illness can constitute 'constructive abandonment,' but rather holds that mental illness is an *example* of the rare circumstances under which constructive disappearance may provide a basis for Rule 60(b)(6) relief." *Webb v. City of New York*, No. 08 Civ. 5145, 2011 WL 5825690, at *2 (E.D.N.Y. Nov.

---

[13] One factor considered by the court in *Church & Dwight*—a conflict of interest of defendant's counsel—is not present in Mr. Williams's case.  *See* 2011 WL 4529605, at *7.

17, 2011) (emphasis added).  The Government can point to no case that expressly supports their attempt to limit constructive disappearance to that one situation.  In fact, "the Second Circuit has never limited Rule 60(b)(6) relief, premised on attorney neglect, to instances where the attorney is mentally ill."  *Church & Dwight Co.*, 2011 WL 4529605, at *6; *cf. Amorosi v. Comp USA*, No. 01 Civ. 4242, 2005 WL 66605, at *5 (S.D.N.Y. Jan. 12, 2005) (implicitly acknowledging that situations other than mental illness could qualify as "extraordinary circumstances," but denying relief because movant did not provide the court with *any* evidence of extraordinary circumstances).[14]    Accordingly, there is no support for the Government's argument that constructive disappearance is limited only to cases of mental illness.

Second, citing *Webb v. City of New York*, the Government argues that the failure of a lawyer to take action on behalf of a client is merely gross negligence, which does not rise to the level of constructive disappearance.  *See* Gov't's Opp'n at 15-16 (citing No. 08 Civ. 5145, 2010 WL 3394537, at *5 (E.D.N.Y. Aug. 23, 2010) (holding that an attorney who "never took any action on behalf of his client once the complaint was filed" did not physically or constructively disappear but was merely "grossly negligent")).  But in a subsequent decision, the court in *Webb* ultimately *did* find the attorney's behavior to be "so egregious and profound that it amount[ed] to abandonment."  *See* Order Granting Mot. Set Aside J. ("Order") at 8, *Webb v. City of New York*,

---

[14] At the March 20 hearing, the Government argued that an attorney's non-responsiveness to a client caused by situations other than mental illness should be understood as forms of *physical* disappearance rather than *constructive* disappearance.  Thus, in response to a hypothetical where a lawyer actively evades a client, the Government stated that such a situation should be understood as a "physical" disappearance, because, from the client's perspective, the attorney would be impossible to find.  *See* Tr. at 32:18-34:17.  But from a client's perspective, an attorney that is wholly inert, as here, does not seem as a practical matter to be any different from one who is actively evading the client.  If the latter constitutes a form of "disappearance" rising to the level of extraordinary circumstances, it is hard to understand how the former would not as well.  In both situations the client is effectively left without representation, and with little recourse.

No. 08 Civ. 5145, ECF No. 34 (E.D.N.Y. Sep. 26, 2011).  There, the court granted Rule 60(b)(6) relief because there was "evidence showing that [the movant] did not know her case was being ignored by the attorney she retained to represent her. . . . It was only after her case had been dismissed with prejudice . . . that she discovered [her attorney] had not been litigating her case at all, and even then she only learned of the judgment from a different attorney." *Id.* at 7.  Similarly, here, Mr. Williams presents evidence that he did not know his attorney filed his habeas petition, consented to its dismissal, and then failed to re-file it post-*Davis* and -*Barrett*; he only learned of these failures as a result of these proceedings.  *Webb* therefore supports Mr. Williams's position rather than the Government's.

Third, the Government points to evidence in the record indicating that there may have been some communication between Mr. Williams and the Federal Defenders around the time of his habeas petition—including in 2020, after *Davis* was decided—suggesting that he was not abandoned altogether by his habeas counsel.  *See, e.g.*, Tr. 12:11-19.  But, as noted above, it is unclear what, if any, contacts Mr. Williams had with habeas counsel during this period.  While there is evidence of one call placed by Federal Defenders to him *after* his petition was filed, there is no evidence whatsoever of such communications before it was filed on June 23, 2016, and evidence from the petition itself (which, despite requiring a signature, was not signed by him and was apparently never mailed to him) tends to suggest there were none.  Nor is there any evidence of conversations between Mr. Williams and habeas counsel around the time that his petition was withdrawn in October 2017, and Mr. Williams's pro se filings with the court both before after the petition was filed suggest that he did not believe he was represented by the Federal Defenders at that time.  The Court therefore cannot find, as a factual matter, that Mr. Williams and the Federal Defenders actually communicated regarding the decision to file his habeas petition, the decision to consent to its dismissal, or the decision—if any was made—not to re-file it after *Davis* was

23

decided. The bulk of the evidence in the record indicates that there were no such communications during those critical junctures.

Ultimately, however, the Court finds this issue immaterial to the question of whether extraordinary circumstances justifying Rule 60(b)(6) relief are present here, because Mr. Williams was clearly abandoned under either scenario. If, as Mr. Williams attested, the Federal Defenders failed to communicate with him regarding the decision to consent to the dismissal of his petition and/or the decision not to seek relief after *Davis*, then they abandoned him while also violating counsel's duty to ensure that clients be promptly informed of "material developments in the [case]." *See* N.Y. Bar Ass'n Rules of Prof. Conduct, Rule 1.4(a)(1) (N.Y.S.B.A. 2025). If, by contrast, Mr. Williams was in contact with the Federal Defenders (as the Government argues the Court should find), and yet they still failed to re-file his § 2255 petition after *Davis* and *Barrett* were decided, then that would seem to make this case even more analogous to *Church & Dwight* and *Webb*. In both of those cases, the movants relied on assurances from counsel that their cases were being pursued, only for counsel to constructively abandon them by failing to defend or prosecute their cases. *See Church & Dwight Co.*, 2011 WL 4529605, at *7 (finding that movant understandably "reli[ed] on [counsel's] assurances that this litigation was proceeding normally"); Order at 8-9, *Webb*, No. 08 Civ. 5145, ECF No. 34 (E.D.N.Y. Sep. 26, 2011) (granting Rule 60(b)(6) relief and noting movant had relied on counsel's assurances of action). As noted above, even the Government could not imagine a strategic reason for the failure to seek relief after *Davis*, which cuts against the notion that his counsel was somehow continuing to pursue his case at this time.

In sum, habeas counsel did not simply make poor strategic decisions or fail to pursue a particular argument. They simply disappeared, abandoning Mr. Williams altogether to complete an unconstitutional sentence, with profound implications for his current prosecution. The conduct

24

was "egregious and profound," rising to the level of extraordinary circumstances meriting Rule 60(b)(6) relief.  *Harris*, 367 F.3d at 81.

      2.      Diligence

The Second Circuit has affirmed the denial of Rule 60(b)(6) relief even where a movant was abandoned by their attorney, holding that a movant may remain "bound by the inexcusable conduct of [their] counsel" where there is "no indication of diligent efforts by [the client] to induce [counsel] to fulfill his duty."  *Dominguez*, 583 F.2d at 618.  Cases finding an absence of such diligence emphasize that the client "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."  *See, e.g., Cirami*, 563 F.2d at 35.[15]  Accordingly, courts have denied Rule 60(b)(6) relief where the movant did not try to move their chosen lawyer to take some sort of action.  *See, e.g.*, *Canouse v. Protext Mobility, Inc.*, No. 22 Civ. 1335, 2023 WL 3490915, *3 (2d Cir. May 17, 2023) (affirming denial of relief based where client failed to act with diligence despite being "*on notice* that [their adversary] would move for a default judgment" and "*aware* that [their] counsel had previously failed to respond on [their] behalf to [their adversary's] amended complaint") (emphases added).

The facts of this case, however, are different and are quite unusual.  Unlike in *Cirami* and other cases where courts found a lack of diligence, Mr. Williams had no agency whatsoever in the selection of his attorney, who was appointed by the Court, and thus not a "freely selected agent."

---

[15] *See also Mayimba Music, Inc. v. Sony/ATV Latin Music Publ'g LLC*, No. 12 Civ. 1094, 2016 WL 11943525, at *4 (S.D.N.Y. Mar. 31, 2016) ("Even if [the attorney's] performance were inadequate, [the movant] cannot challenge a final judgment by pointing to the quality of counsel whom it voluntarily chose and to whom it remained loyal notwithstanding conduct that it later claimed to be eccentric."); *Sasso v. M. Fine Lumber Co., Inc.*, 144 F.R.D. 185, 189 (E.D.N.Y. 1992) ("Rule 60(b) does not insure a defendant against the actions of his freely chosen attorney . . . .").

563 F.2d at 34.  And, as noted above, the record supports Mr. Williams's attestation that he was not even aware that the Federal Defenders had filed the § 2255 petition on his behalf before they filed it, nor that they withdrew it and then failed to re-file it after *Davis* was decided.  Given all of that, it is difficult to fault him for not demanding more action from his habeas counsel.  *Cf. Hollingsworth v. City of New York*, No. 95 Civ. 3738, 1997 WL 91286, at *3 (S.D.N.Y. Mar. 4, 1997) ("It would be inappropriate to punish the client for the conduct of her attorney, particularly when there is no evidence that the client is aware of the problem.").  To the extent that some showing of diligence is required in a case where, as here, a client is left totally in the dark by their attorney,[16] the Sixth Circuit has addressed a somewhat similar situation.  In *Fuller v. Quire*, 916 F.2d 358, 361 (6th Cir. 1990), a case where a movant was not notified of a docket call and the subsequent dismissal of the case, the Sixth Circuit held that it was enough that the movant acted with "reasonable diligence in attempting to discover the status of his case."  Here, Mr. Williams made an analogous effort: he made six requests, on a pro se basis, to obtain his case file and

---

[16] There is some Second Circuit case law suggesting that, to obtain Rule 60(b)(6) relief, a movant "must" show such diligence. *See Canouse*, 2023 WL 3490915, at *3. *Canouse*, however, is a non-precedential summary order. *See* 2d Cir. R. 32.1.1 (precedential effect of summary orders) ("Rulings by summary order do not have precedential effect.").  And while this Court does not simply disregard the words of the Second Circuit in a summary order, it notes that *Canouse* relied on *Dominguez, see Canouse*, 2023 WL 3490915, *3, which *is* a published decision, and which did not go quite so far as to hold that such diligence is a prerequisite to relief in every case. *Dominguez* simply affirmed the denial relief in that case based on the absence of any "indication of diligent efforts by [the client] to induce [counsel] to fulfill his duty," 583 F.2d at 618—a holding that seems to have limited if any application to situations where, as here, a client is left uninformed about what the lawyer is (or is not) doing.  There is in no clear case law from the Second Circuit indicating that diligence is required such situations.  Ultimately, the diligence requirement—which is meant to show that an attorney has abandoned a client despite the client's best efforts to move the attorney to act—may have little or no application to a case like this.  In any event, the Court need not resolve this question because, as explained above, it concludes that the degree of diligence exercised by Mr. Williams was reasonable under the unusual circumstances presented here.

sentencing transcript, including on several occasions after the date that his petition was filed. *See supra* n.9. Given the totality of the circumstances in this case, including the limitations on Mr. Williams during this period described above, the Court deems this effort reasonable and "grant[s] relief from the judgment in order to avoid penalizing [Mr. Williams], who displayed reasonable diligence in attempting to discover the status of his case, for the inexcusable misconduct of his attorney." *See Fuller*, 916 F.2d at 361.

### CONCLUSION

Mr. Williams's motion is meritorious on both extreme hardship and extraordinary circumstances grounds. While relief under Rule 60(b)(6) on extreme hardship grounds should be granted only sparingly, his exposure to a mandatory minimum sentence of 25 years instead of seven qualifies as an extreme hardship. That eighteen-year difference is the time it takes for a newborn to grow into a legal adult; it is hard to think of more manifest injustice than allowing an unconstitutional prior conviction to subject someone to an additional period of mandatory incarceration for such a duration. Moreover, Mr. Williams's counsel's complete abandonment of him is a rare example of exceptional circumstances, which independently warrants relief under the Rule.

Accordingly, for the reasons given above, Mr. Williams's Rule 60(b)(6) motion is **GRANTED**. The order dismissing his petition, *see* No. 12 Crim. 944, ECF No. 17, is hereby vacated, and the Clerk of Court is respectfully directed to so note on the docket.

The Clerk of Court is respectfully requested to terminate ECF No. 19.


SO ORDERED.

Dated: April 30, 2026

      New York, New York


                                  DALE E. HO
                           United States District Judge